UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEVERNE MCCANTS,

    Plaintiff,

v.                                     CASE NO. 8:13-CV-1590-T-33MAP

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

      This is an action for review of the administrative denial of disability insurance benefits (DIB), period of disability benefits, and supplemental security income (SSI). *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). Plaintiff argues that the decision of the Administrative Law Judge (ALJ) is not supported by substantial evidence because the ALJ did not properly assess the severity of Plaintiff's impairments, erroneously determined he was not disabled prior to March 2004, and did not follow the Appeals Council's June 2011 Remand Order. After considering Plaintiff's arguments (doc. 14), Defendant's response (doc. 15), and the administrative record, I conclude that the Commissioner's decision is in accordance with the law and supported by substantial evidence. I therefore recommend the Commissioner's decision be affirmed.

      *A.*    *Background*

      Plaintiff Leverne McCants was born on September 19, 1956, and has less than a high school education. (R. 34, 277) He has past work experience as a forklift driver and laborer. (R. 83) Plaintiff initially alleged disability commencing October 29, 1997, due to AIDS, acute renal failure, anemia, hypertension, and neuropathy. (R. 308) Plaintiff filed his first application for SSI and DIB in May

2002.  These claims were denied.  Plaintiff did not appeal.[1]  Plaintiff filed a second application in August 2008.  (R. 34)  Without a hearing, the ALJ found Plaintiff was disabled for SSI purposes as of October 2008.  Because Plaintiff's date of last insured for DIB purposes was March 2004, however, the ALJ dismissed Plaintiff's DIB application. (R. 131-35)  This time, Plaintiff appealed.  According to Plaintiff, he had agreed with the Commissioner to amend his onset date in return for an expedited and favorable SSI decision but did not intend to abandon his DIB claim. (R. 138)  The Appeals Council (AC), in a June 2011 decision, granted Plaintiff's request for a hearing and remanded the case to the ALJ. (*Id*.)

Consequently, an ALJ again reviewed Plaintiff's October 2008 DIB and SSI applications.  In a third decision (the one at issue here), ALJ Arline Colon found that from September 2002 (the date of his application) through March 2004 (his date of last insured), Plaintiff suffered from gouty arthritis, osteoarthritis, chronic back pain, obesity, HIV, hyperlipidemia, dental problems, and hypertension. (R. 34-53)  Because none of these impairments qualified as severe, Plaintiff was not disabled during this time period. (R. 37)  Next, the ALJ found that since October 2008 (Plaintiff's amended onset date), the claimant suffered from a similar list of impairments:  gouty arthritis, mild osteoarthritis of the left foot, peripheral neuropathy, degenerative disc disease of the lumbar spine, chronic renal failure, HIV, obesity, hemochromatosis, and anemia. (R. 41)  For this time period, the ALJ characterized the impairments as severe. (R. 41-46) Although Plaintiff was unable to perform his past relevant work, he retained the RFC to perform light work. (R. 46)

---

[1] Plaintiff claimed he did not appeal the 2002 decision because he is illiterate and did not know how.  Instead, Plaintiff requested that his 2008 application be considered as an appeal of the 2002 denial of benefits.  In the most recent opinion, the ALJ found there was no good cause to do this, because Plaintiff did not prove his illiteracy. (R. 34)

2

Adding another twist in the case, through September 17, 2011, Plaintiff was "an individual closely approaching advanced age," which meant there were jobs he could perform at his RFC. (R. 50-51) But because Plaintiff became "an individual of advanced age" on September 18, 2011, the ALJ found Plaintiff could not transfer his job skills to other occupations anymore; thus, there were no jobs in significant numbers in the national economy Plaintiff could perform at his RFC. (*Id.*) The result was that the ALJ found Plaintiff disabled as of September 18, 2011, due to direct application of Medical-Vocational Rule 202.02.  (R. 52)

Plaintiff again appealed.  In April 2013, the AC issued a partially favorable decision. (R. 8-15) After reviewing the opinion of Gerald Bell, M.D., a consultative physician retained to evaluate the medical evidence, the AC concluded Plaintiff's peripheral neuropathy secondary to HIV met the criteria of Listing 14.08K as of February 16, 2009; Plaintiff was adjudicated disabled as of this date. (R. 12-13)  For the period prior to February 16, 2009, however, the AC adopted the ALJ's decision that Plaintiff was not disabled. (R. 14)

Plaintiff, who has exhausted his administrative remedies, filed this action.

*B.     Standard of Review*

To be entitled to DIB and/or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703

F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

  C. *Discussion*

    1. *Plaintiff's Impairments Through March 2004*

Plaintiff argues that the ALJ erred in considering his DIB application when she determined that his impairments were non-severe prior to March 2004 (the date of last insured). Plaintiff asks the Court to remand the case to the ALJ to continue through the sequential evaluation process past step two for the September 2002 through March 2004 time period.[2] An impairment is severe if it significantly limits one's ability to perform "basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a) ("Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that his impairments significantly affect his ability to perform basic work activities. *See McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

The severity test at step two is designed to screen out only clearly groundless claims. *Stratton v. Bowen*, 827 F.2d 1447, 1452 (11th Cir. 1987). In fact, the Eleventh Circuit describes step-two as the "slight abnormality test." *Bridges v. Bowen*, 815 F.2d 622, 625 (11th Cir. 1987). Under this test, "an impairment can be considered as not severe only if it is a slight abnormality

---

  [2] Plaintiff does not argue that the ALJ failed to consider the combined effects of all of his impairments.

which has such a minimal effect on the individual that it would not be expected to interfere with the individual's work irrespective of age, education, or work experience." *Cantrell v. Bowen*, 804 F.2d 1571, 1573 (11th Cir. 1986). To satisfy the step two requirements, the claimant's impairments also must be severe for at least 12 consecutive months. *Barnhart v. Wilson*, 535 U.S. 212, 217 (2002).

Certainly, Plaintiff had health problems prior to March 2004. The ALJ recognized that Plaintiff suffered from gouty arthritis, osteoarthritis, chronic back pain, obesity, HIV, hyperlipidemia, dental problems, and hypertension through 2004. (R. 41) In determining that these impairments were non-severe, the ALJ noted the relative paucity of medical records for this time period. (R. 39) Also, Plaintiff's laboratory results were within normal limits, Plaintiff had mostly normal examination results, and he did not report any significant complaints. (R. 40-41)

Plaintiff, on the other hand, points out that both Kenneth Crager, M.D. and Douglas Walsh, D.O., two of Plaintiff's treating physicians from 2002 through 2004, opined in 2010 (in response to Plaintiff's counsel's inquiry) that Plaintiff's limitations prior to 2004 were disabling. The ALJ gave no weight to these opinions because they were inconsistent with the doctors' own records. (R. 40) Instead, the ALJ assigned significant weight to the consultative opinion of John Dawson, M.D. Dr. Dawson reviewed some of the medical records and concluded that the medical evidence prior to 2004 was insufficient to make a determination regarding Plaintiff's disability. (*Id.*)

Plaintiff was a patient at Manatee County Rural Health in 2000 but was not seen there again until December 2003. From that point until March 2004, he was a no-show for appointments four times and did not receive treatment at the clinic again until October 2005. When he did show up for appointments, he mostly denied complaints. In December 2003, he was "doing well, no complaints." (R. 862) In January 2004, he reported "doing well." (R. 863) Dental problems were his main

6

treatment concern. There is no suggestion from the clinic's treatment notes that Plaintiff's impairments interfered with his ability to perform work. In fact, a January 2004 treatment note states that Plaintiff "is a truck driver most of the time he is out of town. He may come back once a month." (R. 863) Although the clinic's records reflect an individual with multiple health concerns, a diagnosis does not equate to a severe impairment. *See* 20 C.F.R. §§ 404.1505, 404.1509, 416.905, 416.909; *see also Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard.").

Plaintiff treated at Peninsula Arthritis Associates five times between 2002 and 2004. He reported occasional flare-ups of gouty arthritis and "quite a bit of trouble" with his right foot. (R. 950). But in June 2002, he showed no signs of clubbing, cyanosis, or edema in his extremities, his grip strength was normal, and his examination was "relatively unremarkable." (R. 951-52) Richard Brown, M.D., noted Plaintiff had a history of a ruptured disc and "symptomatic" ankles, knees, and feet. (*Id*.) Plaintiff was feeling "so-so" at his July 2002 check-up with Dr. Brown and "his gout is better." (R. 950) Although his feet and ankles showed deformities, Dr. Brown's treatment plan was a conservative, "wait and see" one.

In October 2002, Plaintiff was still feeling "so-so." (R. 949) Dr. Brown wrote: "He is somewhat better. His right ankle is still giving him some symptoms, but his gout has been relatively quiet and he has had no other major flare-ups." (*Id*.) Dr. Brown did not make any significant changes to Plaintiff's treatment plan. (*Id*.) In February 2003, Dr. Brown noted Plaintiff's "feet and ankles are still giving him a lot of trouble because of severe pes planus" but that "the patient is, overall, doing fairly well with his arthritis." (R. 948) Again, Dr. Brown did not make

major changes to Plaintiff's treatment plan other than to recommend he lose weight. There is then a treatment gap until August 2003, when Plaintiff reported to Dr. Crager[3] that he was "feeling fine" and "does not have any pain." (R. 946) He mentioned a gouty attack the previous month but it was "the only [attack] he can remember for a long time." (*Id*.)

In June 2010 (six years after Plaintiff's date of last insured), Dr. Crager filled out a form at Plaintiff's request that asked him to opine on Plaintiff's limitations prior to March 2004. (R. 841-42). Dr. Crager checked the blank next to a line that read: "Mr. McCants would have been unable to stand and/or walk 6-8 hours a day for 5 days a week." (R. 841) Dr. Crager does not offer any explanation for this opinion. In light of Dr. Crager's treatment notes prior to March 2004, which do not reflect severe impairments, the ALJ's rejection of Dr. Crager's conclusory statement is not in error. *See Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (good cause for disregarding a treating physician's opinion "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.").

In July 2010, Dr. Walsh from Manatee County Rural Health Services also offered an opinion of Plaintiff's limitations prior to March 2004. (R. 843-44) He reported that Plaintiff had chronic osteoarthritis in his ankles in 2005 and that this condition undoubtedly existed a year earlier. He noted Plaintiff's chronic back pain was present then as well. According to Dr. Walsh, Plaintiff could not have worked full time prior to 2004. (R. 844) Although Dr. Walsh's opinion is more developed and thoughtful than Dr. Crager's, the ALJ properly rejected it as inconsistent with the

---

[3] This is the one time during the relevant time period (2002 through 2004) that Dr. Crager treated Plaintiff. Dr. Crager treated Plaintiff multiple times after 2004.

clinic's earlier treatment notes. As described above, from 2002 through 2004, Dr. Walsh and his colleagues painted a picture of an individual with multiple impairments that were under control. *See Bloodsworth*, 703 F.2d at 1240 (finding that an ALJ may reject the opinion of any physician when the evidence, as a whole, supports a contrary conclusion). Substantial evidence supports the finding that these impairments became severe later in Plaintiff's treatment. Thus, Plaintiff has not sustained his burden of demonstrating that his impairments – prior to March 2004 – created more than minimal limitations on his ability to function.

        2.        *Appeals Council's Consideration of William Pettibon, Ph.D.'s Opinion*

In a related argument, Plaintiff contends the AC erred in its evaluation of Dr. Pettibon's January 2013 opinion regarding Plaintiff's mental limitations and their impact on his DIB application. (R. 1-4) Plaintiff submitted Dr. Pettibon's opinion to the AC in the hope of convincing the Commissioner that Plaintiff's mental limitations pre-dated March 2004. Dr. Pettibon opined that Plaintiff's test results point to a person with long-standing mental issues and learning disabilities. (R. 1175-79)

Generally, a claimant is allowed to present new evidence at each stage of the administrative process. *See* 20 C.F.R. §§ 416.1470(b), 416.1479 (stating that the AC makes its decision after reviewing the evidence before the ALJ "and any additional evidence received"). The AC must consider new, material, and chronologically relevant evidence and must review the case if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 416.1470(b).

"When a claimant challenges both the ALJ's decision to deny benefits and the decision of the AC to deny review based on new evidence, 'a reviewing court must consider whether that new

evidence renders the denial of benefits erroneous.'" *Poellnitz v. Astrue*, 349 F. App'x 500, 501 (11th Cir. 2009) (*quoting Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262, 1265-66 (11th Cir. 2007)). What Plaintiff requests here is a sentence-four remand under 42 U.S.C. § 405(g). A sentence-four remand is appropriate when the evidence was properly before the Commissioner, but "the [AC] did not adequately consider the additional evidence." *Id*. at 504 (quotation omitted). Under sentence four, the district court must generally "consider evidence not submitted to the [ALJ] but considered by the [AC] when that court reviews the Commissioner's final decision denying Social Security benefits." *Id*. (quotation omitted). To warrant a sentence-four remand, the court must either find that the decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See Jackson v. Chater*, 99 F.3d 1086, 1091-92 (11th Cir. 1996).

    Dr. Pettibon's opinion is dated January 4, 2013, nine years after Plaintiff's date of last insured. Dr. Pettibon did not state explicitly that his diagnosis pertained to Plaintiff's functional abilities as far back as March 2004. Even if he had, the doctor's evaluation does not undermine the substantial evidence supporting the ALJ's decision that Plaintiff was not disabled for DIB purposes prior to March 2004. Although Plaintiff stresses that IQ scores remain generally constant throughout an individual's lifetime, an IQ score alone is not determinative of an individual's mental capacity. *See Ingram*, 496 F.3d at 1266 (finding that evidence submitted to the AC is considered with the record as a whole to determine if substantial evidence supports the ALJ's decision). Further, Dr. Pettibon examined Plaintiff only once. He was not a treating physician during the relevant time period. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (the opinions of consultative examiners not entitled to deference "because as one-time examiners they were not

treating physicians"). I find that the AC's consideration of Dr. Pettibon's opinion was proper.

       3.     *Scope of ALJ's Order*

Plaintiff's final argument is that the ALJ misconstrued the 2011 AC's remand order. The 2011 AC found, in relevant part:

> The hearing decision also indicates that by letter dated March 11, 2010, the claimant, through his representative, voluntarily elected to withdraw his request for a hearing as it pertained to the application for a period of disability, disability insurance benefits. The Administrative Law Judge dismissed that portion of the claimant's request for a hearing under Title II of the Social Security Act based on the claim for a period of disability and disability insurance benefits.
> 
> . . .
> 
> The Administrative Law Judge determined that the evidence of record supported a fully favorable decision based on the claimant's application for Supplemental Security Income dated August 29, 2008 and no hearing was held citing 20 CFR 404.948(a) and 416.1448(a). However, the Appeals Council notes that the notice of decision should have informed the claimant that he has a right to an oral hearing and that he has the right to examine the evidence on which the decision is based (20 CFR 416.1448(a)). Therefore, the Appeals Council with regard to the request for review of the hearing decision deems this a request by the claimant to request an oral hearing.
> 
> The Appeals Council grants the request for review under the provisions of the Social Security Administration regulations (20 CFR 404.970 and 416.1470). Under the authority of 20 CFR 404.977 and 416.1477, the Appeals Council vacates the dismissal. With the dismissal no longer being in effect, the claimant will have an opportunity to be heard on all relevant issues including the repeat contention about good cause for the late filing of an appeal.

(R. 136-37)

Based on this language, Plaintiff contends that the AC only vacated the portion of the second ALJ's decision that dismissed Plaintiff's DIB application; the AC intended Plaintiff's SSI benefits award to remain in effect. According to Plaintiff, the only issue the ALJ should have considered was whether Plaintiff is entitled to DIB.

11

Instead, ALJ Colon interpreted the order as completely vacating the previous ALJ's decision, which necessitated another decision on both Plaintiff's SSI and DIB applications. ALJ Colon held a hearing, reviewed the evidence, and concluded Plaintiff was entitled to benefits as of September 2011 (rather than October 2008, as had the previous ALJ). (R. 34-53) Plaintiff appealed again, and the 2013 AC determined the disability onset date was February 2009. (R. 14)

The ALJ's interpretation of the 2011 AC's order was not in error. Plaintiff cites *Berryman v. Massanari*, 170 F. Supp. 2d 1180, 1184 (N.D. Ala. 2001), a case that is inapposite. In *Berryman*, the court noted the AC had vacated the ALJ's decision as to Title II benefits (DIB) but did not vacate the portion of the ALJ's decision awarding Title XVI (SSI) benefits. *Id*. The ALJ's interpretation of the AC's remand order in *Berryman* was not at issue. Here, it is.

An ALJ is bound to follow the AC's order and may not take action inconsistent with it. *See* 20 C.F.R. §§ 404.977(b), 416.1477(b). These same regulations provide: "The administrative law judge shall take any action that is ordered by the Appeals Council and *may take any additional action that is not inconsistent* with the Appeals Council's remand order." *Id*. (emphasis added). The 2011 AC Order is not a model of clarity. The ALJ had the following discussion with Plaintiff's representative about the order at the hearing:

> Plaintiff's Representative: My interpretation is that the appeals council vacated the Title II decision. That was the dismissal because in the language the appeals counsel [sic] says they vacate the dismissal. The only claim that was dismissed in the ALJ's decision was the Title II claim. There was a Title II application in association with the prior application. So we don't think the Title XVI is open for review. . . .
>
> ALJ: I was just – that's my understanding, that both are under my review. The caption of the order indicates both titles. Also, they say they're going to grant the review under Social Security regulations of 404.970 and 416.1470. So they're granting a review, also indicating that they're extending the rights. They're now giving the claimant rights that he was not given before regarding an oral hearing to

>which the prior decision was made. And again, they cite to both regulations with regard to the claimant will be heard on all relevant issues, including the repeat contention about good cause for late filing an appeal.
>
>So I haven't heard any arguments that I can point to in terms of this decision that states that it's [Title XVI] is not before me. It's not the most clear order that I've read, but I am certainly open to argument of why Title XVI was not before me, and I just can't see it with the language of giving them the right to examine the evidence and give oral testimony. That's new evidence right there and then. You cannot say you're affirming a Title XVI without looking at the additional evidence.

(R. 68-69)

While Plaintiff's interpretation – that the AC intended to dismiss only the DIB portion of his application – makes some sense given the complicated procedural background of this case, when read in the context of the entirety of the AC's order, I cannot subscribe to this view. Nowhere in the Notice of Order of Appeals Council (R. 136) or the Order of Appeals Council (R. 137-38) does the AC indicate that its remand order is a partial one. Instead, the AC cites to both SSI and DIB regulations throughout its order and cites only the applicable SSI regulation when explaining that the ALJ should have notified Plaintiff of his right to an oral hearing. (R. 138) Additionally, the AC concludes that "the claimant will have an opportunity to be heard on all relevant issues *including the repeat contention about good cause for the late filing of an appeal*." (*Id*.) (emphasis added) A reasonable interpretation is that issues *in addition* to the late filing of an appeal of his DIB denial will also be heard. This interpretation is not "inconsistent with the Appeals Council's remand order." 20 C.F.R. § 416.1477(b). Accordingly, the ALJ did not err in its interpretation of the AC's 2011 Order.

*D. Conclusion*

For the reasons stated, it is hereby

RECOMMENDED:

1. The decision of the Commissioner be AFFIRMED and judgment be entered in favor of the Commissioner.

IT IS SO REPORTED in Tampa, Florida on April 15, 2014.

*/s/ Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attaching the factual findings on appeal. 28 U.S.C. § 636(b)(1).